IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEONA WALKER,

    *Plaintiff,*

vs.                                                     Case No. 20-CV-02338-EFM-JPO

CHRISTINE WORMUTH,[1]
Secretary of the Army,

    *Defendant.*

**MEMORANDUM AND ORDER**

Before the Court is Defendant Christine Wormuth's motion, in her capacity as Secretary of the Army, to dismiss Plaintiff's Complaint in its entirety. Plaintiff Leona Walker alleges that Defendant, through her representatives and agents at Irwin Army Community Hospital at Fort Riley, Kansas, subjected Plaintiff to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. Plaintiff further alleges that her supervisors at the hospital retaliated against her for filing Equal Employment Opportunity ("EEO") complaints and discriminated against her because she is black, both in violation of Title VII. Defendant returns that Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff failed to exhaust her

---

[1] On May 28, 2021, Christine Wormuth was confirmed by the U.S. Senate as Secretary of the Army. She is automatically substituted as Defendant in this action. *See* Fed. R. Civ. P. 25(d).

administrative remedies for her hostile work environment claim, as well as one of her stand-alone retaliation claims, and because Plaintiff's Complaint fails to state a plausible claim for relief for her other alleged instances of retaliation and discrimination. For the reasons set out below, the Court agrees and therefore grants Defendant's Motion to Dismiss (Doc. 14).

## I. Factual and Procedural Background[2]

Plaintiff Leona Walker is a certified nurse case manager at Irwin Army Community Hospital ("IACH") at Fort Riley, Kansas. Plaintiff states that, during the term of her employment at IACH, she has long been regarded as a "troublemaker" and "angry black woman" by her supervisors.[3] Plaintiff does not describe how long these labels have followed her, nor whether these labels have actually been used by Plaintiff's supervisors to describe her or are rather Plaintiff's own perception of her supervisors' attitudes. Regardless, Plaintiff believes these labels follow from several EEO complaints she has filed in response to perceived retaliatory or discriminatory treatment against her. In her Complaint, Plaintiff cites four instances of retaliatory or discriminatory treatment that form the basis for her hostile work environment claim, as well as her stand-alone claims of retaliation and discrimination.

First, Plaintiff cites an incident that arose out of a draft application for Special Compensation for Assistance with Activities for Daily Living ("SCAADL") that Plaintiff submitted to the Central Medical Region. Plaintiff describes this as an iterative process whereby

---

[2] These facts, assumed to be true for the purposes of this order, are taken from Plaintiff's Complaint and the three EEO complaints cited in Plaintiff's Complaint and offered as exhibits by Defendant. Though normally the Court only considers the plaintiff's complaint in ruling on a motion to dismiss, the Court may consider documents of undisputed authenticity that are "central to the complaint." *Dunmars v. Ford Cty., Kan. Bd. of Comm'rs*, 2019 WL 3817958, at *3 (D. Kan. 2019) (citations omitted). The authenticity of the EEO complaints is not disputed by the parties and they form the basis of Plaintiff's claims, making them central to the Complaint.

[3] Compl., Doc. 1, at ¶ 8.

an applicant submits a draft, and Central Medical Region returns the draft with corrections until it is finally either accepted or rejected. Plaintiff claims that despite the routine nature of this process, she was singled out for verbal and written counseling by Captain Kristy Chester for submitting a draft SCAADL packet. Plaintiff says her packet was described as "crap" and "unprofessional," even though Plaintiff states that it conformed to SCAADL protocol for a draft.[4] When Plaintiff asked Captain Chester to justify the counseling, Captain Chester could only say that she was told by an unspecified person to counsel Plaintiff. Plaintiff believes this counseling was a reprisal for her undescribed earlier EEO activity. Plaintiff made an EEO complaint about this perceived retaliatory treatment on January 4, 2017, and specifically checked the box for "reprisal" when asked to state how she believed she was discriminated against.

The second incident Plaintiff complains of also involved verbal and written counseling. This time, Plaintiff was counseled by Major Mary Ugaddan because of her work performance. Major Ugaddan told Plaintiff that if her performance did not improve, she would be placed on a performance improvement plan. Plaintiff believes her performance exceeded expectations, and that this counseling was once again a reprisal for her EEO activity. Plaintiff filed an EEO complaint on June 21, 2017, once again checking the box for "reprisal" as the reason she believed she was discriminated against. Plaintiff also checked the boxes for "sex," "race," "age," and "religion."[5]

Plaintiff alleges a third retaliatory incident took place approximately one month later. Plaintiff alleges that Major Ugaddan refused to rate Plaintiff on one aspect of Plaintiff's

---

[4] EEO complaint dated Jan. 4, 2017, (Def.'s Ex. 1), Doc. 15-2, at 2.

[5] Plaintiff makes no allegations that Defendant discriminated against her on the basis of her sex, her age, or her religion in this lawsuit.

performance. According to Plaintiff, Major Ugaddan resented Plaintiff's prior EEO activity, specifically Plaintiff's complaint about Major Ugaddan's counseling. As a result of Major Ugaddan's failure to rate Plaintiff's performance, Plaintiff alleges she did not receive a bonus and other performance awards she believes were warranted by her job performance and were received by similarly situated nurse case managers at IACH. This allegation is not the subject of an independent EEO complaint, nor is it found in any of the three EEO complaints that underly Plaintiff's instant claims.

Finally, Plaintiff alleges a fourth incident occurred when she was denied the opportunity to attend a professional conference for nurse case managers. Plaintiff's Complaint is unclear on this point, but apparently she had applied to attend a Case Management Society of America Conference and her application was either denied or not processed. Plaintiff complained to a supervisor about this, and shortly thereafter Major David Raines came into Plaintiff's office, tossed the approved application on her desk, and told Plaintiff she needed to be on the plane in two days. Plaintiff responded that, because she was not timely informed that she was going to the conference, she had cancelled hotel reservations and could not hand off care of her patients. Major Raines then asked if Plaintiff's hyphenated surname, Black-Walker, was a reference to her race and stated he had interrupted someone eating watermelon in order to process Plaintiff's application. Ultimately, Plaintiff was unable to attend the conference because she could not hand off care of her patients to another nurse case manager. Major Raines, knowing this was the reason Plaintiff could not attend the conference, informed the travel department that Plaintiff refused to board the

plane. Plaintiff filed an EEO complaint on August 9, 2017 and checked the boxes for "reprisal," "sex," "race," "color," and "age" as the reasons she believes she was discriminated against.[6]

On April 6, 2020, the EEOC took final action with respect to Plaintiff's administrative complaints when it denied each of them. Plaintiff now seeks relief in this Court. Taken together, Plaintiff alleges these incidents indicate that her supervisors at IACH have created a hostile work environment for her. Further, Plaintiff alleges that each discrete incident discussed above forms the basis for a stand-alone claim of either retaliation or race discrimination. Defendant moves to dismiss Plaintiff's Complaint in its entirety for failure to state a claim and failure to exhaust administrative remedies.

## II.     Legal Standards

### A.     Failure to State a Claim

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[7] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[8] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[9] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature

---

[6] Once again, Plaintiff's Complaint makes no allegations that she was discriminated against because of her sex or her age.

[7] Fed. R. Civ. P. 12(b)(6).

[8] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

of claims as well the grounds on which each claim rests.[10]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[11]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[12]

**B.     Exhaustion of Administrative Remedies**

Employees alleging Title VII discrimination or retaliation must comply with specific administrative complaint procedures to exhaust their administrative remedies.[13]  This means that employees must file complaints with the Equal Employment Opportunity Commission prior to bringing their claims in federal court.[14]  "This regulatory exhaustion requirement is not a jurisdictional prerequisite for suit but is a claims-processing rule that the employer may raise as an affirmative defense."[15]  "Because it is a mandatory rule, however, the court must enforce this exhaustion requirement if the employer properly raises it."[16]  In this case, Defendant properly raised the affirmative defense.

The twofold purpose of requiring aggrieved parties to file administrative charges is to give employers notice of the "claims being brought against them" and to provide "the EEOC with an

---

[10] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[11] *Iqbal*, 556 U.S. at 678.

[12] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[13] *See Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (citation omitted).

[14] *Azzun v. Kan. Dep't of Health & Env't*, 2011 WL 903901, at *3 (D. Kan. 2011).

[15] *Hickey*, 969 F.3d at 1118 (citations omitted).

[16] *Id.* (citation omitted).

opportunity to conciliate the claims."[17]  Therefore, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim."[18]  Courts must then determine "whether the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made."[19]  Thus, the administrative complaint must include "[e]ach discrete instance of discriminatory treatment."[20]  The court liberally construes administrative complaints in the interest of justice.[21]

### III.     Analysis

**A.     Retaliatory Hostile Work Environment**

Plaintiff failed to exhaust administrative remedies for her claim that Defendant subjected her to a retaliatory hostile work environment.  As noted above, Plaintiff's claims in this Court are "limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."[22]  For a retaliatory hostile work environment claim, the administrative charge must "allege facts indicating a workplace 'permeated with [retaliatory] intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' "[23]  Though the Court liberally construes Plaintiff's EEO complaints and does not require them to identify her

---

[17] *Dunmars*, 2019 WL 3817958, at *3 (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004)).

[18] *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (citation omitted).

[19] *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (cleaned up).

[20] *Dunmars*, 2019 WL 3817958, at *3 (citation omitted).

[21] *Id.* (citing *Foster*, 365 F.3d at 1195).

[22] *Jones*, 502 F.3d at 1186 (citations omitted).

[23] *Mitchell v. City & Cty. of Denver*, 112 F. App'x 662, 668 (10th Cir. 2004) (quoting *Davis v. U. S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998)).

claims with legal precision, her EEO complaints must allege *some* facts to indicate a hostile work environment, such that she was subject to ongoing pattern of intimidation and insult or "a workplace pervaded by abuse."[24]

Plaintiff's administrative complaints fail to allege any facts indicating that she was subject to a hostile work environment. Rather, each complains of a discrete incident. At the outset, the Court notes that on each of the EEO complaints at issue, Plaintiff did not have the ability to check a box marked "hostile work environment" or "harassment" when she was asked how she believed Defendant was discriminating against her. Still, Plaintiff was provided with a narrative portion to describe the alleged discrimination. Thus, the Court looks to these narrative portions in determining whether a hostile work environment claim "would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made."[25]

The first EEO complaint concerned counseling that Plaintiff received for submitting a draft SCAADL packet. In the narrative portion of her complaint, Plaintiff made the following allegations:

> I received a counseling and MFR for work product that was described as "crap" and as "unprofessional." Actually the submission was in draft form, and submitted as such pursuant to SCAADL protocol. I was counseled and a memorandum for counseling was put in my file for following protocol and orders. The suggestion in MFR that I had done otherwise was an attempt to insert derogatory information into my file as reprisal for previous protected activity.[26]

---

[24] *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 33 (D.D.C. 2019) (citation omitted). *See also Mitchell*, 112 F. App'x at 668 ("Mitchell's EEOC charge contains no factual allegations of treatment in manner or degree sufficient to allege a hostile work environment. Consequently, Mitchell's Title VII hostile work environment claim . . . is dismissed for failure to exhaust administrative remedies."); *Carter v. Mineta*, 125 F. App'x 231, 238 (10th Cir. 2005) (finding that plaintiff failed to adequately describe a hostile work environment in her administrative complaint when she only listed three discrete complaints of sex discrimination); *Young v. Norton*, 2006 WL 8443603, at *4 (D.N.M. 2006) ("All of the allegations in the letter concern discreet events and do not allege a hostile work environment.").

[25] *Smith*, 904 F.3d at 1164 (citation omitted).

[26] EEO complaint dated Jan. 4, 2017, (Def.'s Ex. 1), Doc. 15-2, at 2.

Clearly, this allegation concerns a single incident in which Plaintiff believes she was counseled in retaliation for an earlier administrative complaint. Plaintiff makes no mention of any ongoing or pervasive abuse that might have led the EEOC to investigate whether Defendant had created a hostile work environment for Plaintiff, and in no way provides her employer notice of such a potential claim. Rather, Plaintiff's EEO complaint focuses solely on this one alleged instance of retaliation.

Similarly, Plaintiff's second EEO complaint concerns a discrete event of counseling by her supervisors. Plaintiff complained that:

> Because of my race and prior protected activity noted above I received pretextual counseling on April 11, 2017 from MAJ Mary Andrea Ugadden, which was linked to potential adverse employment action.
>
> In addition to a Developmental Counseling Form, dated April 14, 2017, I was advised by MAJ Ugadden that if my work performance did not improve, or if there were further complaints, that I would be placed on a Performance Improvement Plan. In fact I have been performing my duties in a manner exceeding reasonable expectations.[27]

The narrative goes on to explain these allegations in more detail, but no more detail is needed to see that investigation into a hostile work environment claim would not reasonably grow out of this charge of "pretextual" performance counseling. Once again, this charge is focused on a discrete incident alleged to be race discrimination and retaliation. Nothing in this charge is indicative of an "ongoing pattern of conduct" or "a workplace pervaded by abuse."[28]

Finally, Plaintiff's third EEO complaint alleged that she was denied, based on her race and in retaliation for her protected activity, an opportunity to attend a conference. She alleged:

---

[27] EEO complaint dated June 21, 2017, (Def.'s Ex. 2), Doc. 15-3, at 2.

[28] *Jimenez*, 395 F. Supp. 3d at 33 (citation omitted).

> I was denied a reasonable opportunity to participate in the annual Case Management Society of America Conference, and when I asked for an explanation was told that I was just an old nurse who wanted to do things my own way and was asked if my maiden name "Black" was a reference to and warning about my race. I was denied the opportunity to participate in this conference due to my prior protected activity, my race and apparently my age. It is clear that the [A]gency wants me gone because I insist on equal employment opportunity.[29]

The Court once again notes that this narrative complains of a discrete incident of race discrimination and retaliation for prior protected activity. Nowhere in this narrative does Plaintiff suggest that Defendant has engaged in an ongoing pattern of abuse, intimidation, or insult, nor would an investigation into a hostile work environment reasonably grow out of Plaintiff's charge. This, again, is not sufficient to give notice to Defendant of a possible hostile work environment claim, nor to give the EEOC the opportunity to conciliate this claim.

Further, even taken together, these three EEO complaints do not "allege facts indicating a workplace 'permeated with [retaliatory] intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' "[30] The conduct alleged in these complaints failed to suggest in any way that a hostile work environment may have been at play, either by referencing an ongoing pattern of intimidation or abuse or by complaining that Defendant otherwise acted in a way characteristic of a hostile work environment. Rather, Plaintiff complained of three discrete incidents which she, at that time, alleged to be either retaliation for her protected activity or race discrimination. Plaintiff did not include any facts tying these incidents to a larger hostile work environment. Even in cobbling these three EEO complaints together, the conduct Plaintiff alleged did not begin to rise

---

[29] EEO complaint dated August 9, 2017, (Def.'s Ex. 3), Doc. 15-4, at 2.

[30] *Mitchell*, 112 F. App'x at 668 (quoting *Davis*, 142 F.3d at 1341).

to the level of that present in a hostile work environment, either in manner or degree. Because a claim of retaliatory hostile work environment does not "reasonably grow" out of her administrative complaints and thus neither her employer nor the EEOC had notice of such a potential claim, Plaintiff's claim that Defendant subjected her to a retaliatory hostile work environment is unexhausted and not properly before this Court.

Plaintiff advances two novel arguments to persuade this Court that she exhausted administrative remedies for her retaliatory hostile work environment claim. Neither is availing. First, Plaintiff contends that, in *Gunnell v. Utah Valley State College*,[31] the Tenth Circuit recognized that retaliatory hostile work environment is the same cause of action as retaliation, and thus, by marking the box for "reprisal" on her EEO complaints and describing alleged retaliation in the narrative portion, Plaintiff properly exhausted her claim. Plaintiff's reading of *Gunnell* is incorrect. The Tenth Circuit in *Gunnell* recognized that "co-worker hostility or retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim."[32] This holding, that retaliatory harassment by co-workers may satisfy one element of a retaliation claim, cannot be reasonably read as saying that a retaliatory hostile work environment claim is the *same* cause of action as a retaliation claim. Nor have later decisions of the Tenth Circuit and this Court treated the two claims as the same cause of action.[33] As such, the

---

[31] 152 F.3d 1253 (10th Cir. 1998).

[32] *Id.* at 1264.

[33] *See, e.g., Gorny v. Salazar*, 413 F. App'x 103, 107, 112–13 (10th Cir. 2011) (examining the plaintiff's claim of retaliation separately from her claim of retaliatory hostile work environment); *Lombardo v. Potter*, 368 F. Supp. 2d 1178, 1195–96 (D. Kan. 2005) (same); *Nordike v. Verizon Bus., Inc.*, 2014 WL 4749185, at *8, *16 (D. Kan. 2014) (same); *Lawson v. Potter*, 2010 WL 11564954, at *9 (D. Kan. 2010) ("Unlike a retaliation claim, which focuses on discrete incidents, a hostile work environment claim requires a court to consider evidence of general work atmosphere as well as specific instances of hostility.") (citation omitted).

Court rejects Plaintiff's contention that, by marking the box for reprisal in her EEO complaints, she properly exhausted administrative remedies for her retaliatory hostile work environment claim.

Second, Plaintiff contends that the EEOC, following her three administrative complaints, actually investigated her hostile work environment claim, and thus it "reasonably gr[ew]" out of her administrative charges.[34] In support of this, Plaintiff offers the voluminous records of the EEOC investigations that followed her EEO complaints, which clock in at around 750 pages combined. However, instead of citing with specificity the portions she relies on, Plaintiff suggests it is the Court's job to mull over the record of the EEOC investigations and find support for her contention. The Court disagrees. Even if the Court was to consider the record of the EEOC investigations, "[i]n the absence of essential references to the record in a party's brief, the court will not 'sift through' the record to find support for the [plaintiff's] arguments."[35] Therefore, the Court rejects Plaintiff's argument that the EEOC record indicates it actually investigated her claim of retaliatory hostile work environment. Plaintiff's claim is unexhausted and dismissal of the same is appropriate under Rule 12(b)(6).

### B.   Stand-Alone Claims of Retaliation and Discrimination

The incidents Plaintiff relies on in her retaliatory hostile work environment claim also form the basis of her three independent claims of retaliation and one claim that alleges both retaliation and race discrimination. Plaintiff alleges Defendant retaliated against her by failing to rate one aspect of Plaintiff's performance, by counseling her about her SCAADL draft submission, and by counseling her about her work performance. She alleges Defendant discriminated against her

---

[34] *Smith*, 904 F.3d at 1164 (citation omitted).

[35] *United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) (quoting *S.E.C. v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992)).

because of her race and retaliated against her for engaging in protected activity when Major Raines interfered with Plaintiff's attendance at a professional conference.  The Court first examines Plaintiff's claim that Defendant retaliated against her by failing to rate one aspect of her performance, and then turns to her remaining claims.

> 1. *Plaintiff Failed to Exhaust Her Claim that Major Ugaddan Retaliated Against Her by Failing to Rate Plaintiff's Performance.*

In her Complaint, Plaintiff alleges that Major Mary Ugaddan refused to rate Plaintiff on one aspect of her job performance in retaliation for Plaintiff's earlier EEO complaint.  As a result, Plaintiff states that she did not receive a bonus and other performance awards warranted by her job performance and received by other nurse case managers at IACH.  Plaintiff, however, did not first present this claim to the EEOC.  The facts alleged in the Complaint with respect to this claim do not appear in any of Plaintiff's EEO complaints.  Plaintiff alleges these events took place approximately one month after Major Ugaddan counseled her, but Plaintiff's EEO complaint as to that counseling, which she made after Major Ugaddan's alleged failure to rate her performance, makes no mention of it nor any resulting financial detriment to Plaintiff.  Plaintiff's administrative charges were required to alleged specific facts as to the "retaliatory actions underlying each claim" because "each discrete incident of alleged . . . retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted."[36]  Plaintiff's failure to mention Major Ugaddan's refusal to rate her performance in her administrative charges leaves her retaliation claim on those facts unexhausted.  Dismissal of that claim is appropriate under Rule 12(b)(6).

---

[36] *Jones*, 502 F.3d at 1186 (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)) (internal quotation marks omitted).

> 2. *Plaintiff's Remaining Claims of Retaliation and Race Discrimination Must Be Dismissed for Failure to State a Claim Because Plaintiff Does Not Allege that She Suffered an Adverse Employment Action.*

At the outset, Plaintiff contends that the principles of equitable estoppel preclude Defendant from arguing that her complaint fails to state a plausible claim for relief. According to Plaintiff, because 29 C.F.R. § 1617.107 required the EEOC to dismiss Plaintiff's administrative charges if they "fail[ed] to state a claim under § 1614.103 or § 1614.106(a)" [37] and the EEOC did not dismiss her charges, Defendant is now precluded from seeking dismissal. Plaintiff is mistaken. The EEOC's determination that Plaintiff's EEO charges were not required to be dismissed under the applicable administrative standards does not preclude Defendant from moving for dismissal of Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6), nor does it mandate a conclusion that Plaintiff's Complaint must survive such motion.

Turning to the substance of Defendant's motion, Plaintiff must plausibly allege that she suffered some adverse employment action to avoid dismissal of her Title VII race discrimination claim under Rule 12(b)(6).[38] Whether some action of an employer constitutes an adverse employment action is liberally defined and is determined on a case-by case basis.[39] Still, to rise to the level of an adverse employment action, the challenged action must "constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[40]

---

[37] 29 C.F.R. § 1614.107(a)(1).

[38] *Carroll v. Gradient Fin. Grp., LLC*, 2013 WL 3328695, at *6 (D. Kan. 2013) (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)).

[39] *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (citations omitted).

[40] *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (quoting *Sanchez*, 164 F. 3d at 532).

Similarly, for her Title VII retaliation claims, Plaintiff must plausibly allege that she was subject to employer action that a reasonable employee would find materially adverse.[41]

None of Plaintiff's claims of retaliation or race discrimination plausibly allege a materially adverse employment action. Plaintiff's two remaining claims of retaliation allege that she received written and verbal counseling, once from Captain Chester and once from Major Ugaddan. This Court has repeatedly held that incidents of written and verbal counseling are typically "too inconsequential to constitute actionable adverse actions."[42] Unless Plaintiff plausibly alleges that these reprimands constitute "a clear, concrete or significant risk to future employment opportunities," it is too speculative to assume that written and verbal reprimands will have future repercussions, and therefore they alone will not constitute materially adverse action.[43] Similarly, with respect to Plaintiff's claim of race discrimination, her allegation that she was denied the opportunity to attend a professional conference does not constitute an adverse employment action unless Plaintiff plausibly alleges the denial had some effect on the terms and conditions of her employment.[44] Plaintiff here neither alleges that the reprimands nor the denial of travel to the

---

[41] *Carroll*, 2013 WL 3328695, at *6 (citing *Khalik*, 671 F.3d at 1192–93).

[42] *Henry v. Unified Sch. Dist. No. 503*, 328 F. Supp. 2d 1130, 1159 (D. Kan. 2004). *See also Fortner v. State of Kan.*, 934 F. Supp. 1252, 1267 (D. Kan. 1996), *aff'd sub nom. Fortner v. Rueger*, 122 F.3d 40 (10th Cir. 1997) (finding that instances of verbal and written reprimands or counseling did not constitute adverse employment actions); *Henderson v. Int'l Union*, 263 F. Supp. 2d 1245, 1284 (D. Kan. 2003) ("[M]any of the facts plaintiff cites in support of her claim involve incidents in which she was merely counseled or issued a notice or written reprimand, which are simply too inconsequential to constitute actionable adverse actions."); *Olson v. Shawnee Cty. Bd. of Comm'rs*, 7 F. Supp. 3d 1162, 1206 (D. Kan. 2014) ("The plaintiff was subjected to verbal and written reprimands, but these were not material in nature because they did not themselves alter the conditions of her employment.").

[43] *Henderson*, 263 F. Supp. 2d at 1284 (quoting *Kennedy v. Gen. Motors Corp.*, 226 F. Supp. 2d 1257, 1267 (D. Kan. 2002)). *See also Sanchez*, 164 F.3d at 533 (holding that "unsubstantiated oral reprimands" do not constitute adverse employment action unless a plaintiff shows they had some impact on employment status) (citations omitted).

[44] *See Befort v. Kan. Dep't of Com.*, 2009 WL 10707844, at *14 (D. Kan. 2009) ("[C]ourts have found that denial of a single training or travel opportunity is not an adverse employment action."); *Edwards v. U.S. Env't Prot. Agency*, 456 F. Supp. 2d 72, 85 (D.D.C. 2006) ("The greater weight of authority suggests that the denial of a single training or travel opportunity does not constitute an adverse employment action unless the plaintiff can 'tie the alleged discriminatory employment action to some actual, tangible adverse employment consequence.' ") (citation omitted).

conference are tied to some nonspeculative present or future repercussions as to the terms and conditions of her employment. As such, the Court must conclude that Plaintiff has not plausibly alleged that she suffered an adverse employment action. Because Plaintiff fails to allege that she suffered an adverse employment action for her remaining claims of retaliation and race discrimination, those claims fail to state a plausible claim for relief. Dismissal of these claims is appropriate under Rule 12(b)(6).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 14) is **GRANTED.**

**IT IS SO ORDERED.**

This case is now closed.

Dated this 3rd day of November, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE